DETROIT FIDELITY & SURETY CO. *v.* CONTINENTAL BANK.

1. BANKS AND BANKING—PRIORITY OF LIEN—UNIFORM STOCK TRANSFER ACT.
   Uniform stock transfer act (2 Comp. Laws 1929, §§ 9520–9544), not having been adopted by two-thirds vote of members-elect, as required by Constitution (article 12, § 9) relating to banking laws, did not affect bank's priority of lien on its stock standing in debtor's name (2 Comp. Laws 1915, § 7975).

2. SAME—WAIVER.
   Bank president's letter to third party recommending pledgor of bank stock, which was communicated to pledgee, did not waive bank's prior lien on stock under 2 Comp. Laws 1915, § 7975, especially where bank had no notice that stock was pledged.

3. SAME—PLEDGES—PRIORITY OF LIEN.
   Under 2 Comp. Laws 1915, § 7975, bank making loans to stockholder without notice that stock was pledged had prior lien over pledgee.

Appeal from Wayne; Pugsley (Earl C.), J., presiding. Submitted January 16, 1931. (Docket No. 93, Calendar No. 35,437.) Decided February 27, 1931. Rehearing denied June 1, 1931.

Bill by Detroit Fidelity & Surety Company, a Michigan corporation, against Continental Bank, a Michigan banking corporation, and others to enforce a lien on bank stock held by plaintiff as security. Bill dismissed as to defendant Continental Bank. Plaintiff appeals. Affirmed.

*Monaghan, Crowley, Reilley & Kellogg,* for plaintiff.

*Anthony Maiullo,* for defendant Continental Bank.

BUTZEL, C. J. During the year 1923 and thereafter, plaintiff became surety on a number of bonds and notes for defendants Rosenthal, and was obliged to pay a large sum in discharge of its liability thus created. This liability has not been discharged by defendants Rosenthal. In order to indemnify plaintiff against loss on the bonds they pledged to it certain securities, including 10 shares of stock of defendant E. M. Rosenthal, and 125 shares of stock of David Rosenthal in the Continental Bank, the main defendant herein. Just prior to the time plaintiff first became surety on these bonds, Walter Toepel, president of defendant Continental Bank wrote a letter to a representative of the National Surety Company in which Toepel speaks with lavish praise of his 45 years' business and social relationship with David Rosenthal and recommends him for his integrity, honesty, ability, and responsibility. He states that the bank loaned him money from time to time

which he has always paid in accordance with previous arrangements; that he was a valuable customer of the bank and the owner of 100 shares of its stock standing in his own name. The information contained in this letter was communicated to plaintiff by the National Surety Company. No notice was given to the bank by plaintiff of the pledge of this bank stock until some time in the year 1928, five years after the pledge had been made. The bank has been in liquidation for some time, and liquidating dividends aggregating 35 per cent. have thus far been paid to stockholders, but withheld on the 135 shares in question, awaiting the outcome of this litigation. Plaintiff asserts a prior lien on the 135 shares, while the defendant bank claims that it has a right to apply the liquidating dividends from this stock on the very large indebtedness due it from the defendants Rosenthal who have been adjudged bankrupts. The bank claims its priority under 2 Comp. Laws 1915, § 7975 (see 3 Comp. Laws 1929, § 11906), affecting banking corporations. This particular section of the banking law, so far as material here, remains the same as it was when enacted in 1887, and provides as follows:

"The shares of stock of such bank shall be deemed personal property, and shall be transferred on the books of the bank in such manner as the by-laws thereof may direct, but no transfer of stock shall be valid against a bank so long as the registered holder thereof shall be liable as the principal debtor, surety or otherwise to the bank for any debt which shall be due and unpaid, nor in such case shall any dividend, interest or profits be paid on such stock, so long as such liabilities continue, but all such dividends, interest or profits shall be retained by the bank and applied to the discharge of such liabilities; and no stock shall be transferred on the books of

any bank without the consent of the board of directors, where the registered holder thereof is in debt to the bank for any matured and unpaid obligations."

Plaintiff, however, bases its right to priority because the stock certificates of defendant bank did not contain a statement of the right to the retention of lien as provided by the uniform stock transfer act (2 Comp. Laws 1929, §§ 9520–9544). Section 24 of this act (3 Comp. Laws 1915, § 11943 [2 Comp. Laws 1929, § 9543]) provides that all acts or parts of acts inconsistent with it are repealed. Its purpose is to make uniform the laws of transfer of shares of stock in the corporation. Section 15 of this act (3 Comp. Laws 1915, § 11934, as amended by Act No. 10, Pub. Acts 1925 [2 Comp. Laws 1929, § 9534]) reads as follows:

"(There shall be no lien or restriction unless indicated on certificate.) There shall be no lien in favor of such corporation upon the shares represented by a certificate issued by such corporation and there shall be no restriction upon the transfer of shares so represented by virtue of any by-law of such corporation, or otherwise, unless the right of the corporation to such lien or the restriction is stated upon the certificate."

The main question in the instant case is whether this last-quoted section modifies or amends the section quoted from the general banking law.

The case of *United States Gypsum Co.* v. *Houston,* 239 Mich. 249, cited by plaintiff, does not refer to bank stock, and is, therefore, not applicable.

Section 9 of article 12 of the Constitution of this State provides as follows:

"No general law providing for the incorporation of * * * corporations for banking purposes, or regulating the business thereof, shall be adopted,

amended or repealed except by a vote of two-thirds of the members elected to each house of the legislature.''

The legislative history of the uniform stock transfer act shows that it was not passed by a two-thirds vote of both the members of the house and senate. Only 56 out of 100 members of the house voted for it. It is claimed that one of the effects of section 11934, *supra,* was to amend and change the section of the general banking act hereinbefore quoted. Inasmuch as under the constitutional provision this can be done only by a two-thirds vote of the members of each house of the legislature, the uniform stock transfer act did not amend or repeal directly or by implication the section of the banking law hereinbefore quoted. For this reason, the bank has a first lien on the stock and the liquidating dividends for the indebtedness due it from defendants Rosenthal.

Plaintiff waited until the year 1928 before it first notified the bank that it held the stock as security. The prior lien of the bank on the stock was not waived by the letter written by Toepel to the National Surety Company, nor is the bank estopped thereby from asserting its lien. The letter was not written to the plaintiff. While it is not free from ambiguity, the record shows that on August 20, 1924, David Rosenthal had paid up his direct loans from the bank, and that, at the time the bank made subsequent loans to him, it became entitled to a lien under the general banking law, for it had no notice whatsoever that plaintiff claimed a lien on the stock.

Defendant bank did not lose its right to a prior lien. The decree of the trial court in favor of the defendants and appellees is affirmed, with costs.

WIEST, CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.